# UNITED STATES BANKRUPTCY COURT
## FOR THE
### DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**PETER KOUFOS,**
    Debtor

Chapter 7
Case No. 10-23579-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**PETER KOUFOS,**
    Plaintiff,
v.

Adv. P. No. 11-1185

**U.S. BANK, N.A., AS TRUSTEE ON BEHALF
OF THE HOLDERS OF THE CSFB MORTGAGE
PASS-THROUGH CERTIFICATES, SERIES 2005-
CFI, SELECT PORTFOLIO SERVICES, INC.,
NEW CENTURY MORTGAGE CORPORATION,
LENDER PROCESSING SERVICES, INC., LPS
DEFAULT SOLUTIONS, and ABLITT & SCOFIELD,
P.C.,**
    Defendants

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

## MEMORANDUM

## I. INTRODUCTION

Several matters are before the Court:  1) the Motion for Relief from the Automatic

Stay (the "Lift Stay Motion") filed by U.S. Bank National Association, as trustee, on behalf

of the holders of the CSFB Mortgage Pass-Through Certificates, Series 2005-CF1

("U.S. Bank"), and the Opposition to the Motion filed by Peter Koufos (the "Debtor" or the

"Plaintiff"); 2) the Motion for Sanctions Pursuant to Bankruptcy Rule 9011 Regarding

Adversary Proceeding Complaint filed by the law firm of Ablitt│Scofield, P.C. (the "Ablitt

1

Law Firm") pursuant to which it seeks sanctions against Glenn F. Russell, Jr., Esq. ("Attorney Russell"), the Debtor's attorney for "making statements and allegations unsupported by any reasonable inquiry into the facts and incorrect recitations of the law contained in the Complaint . . ." (the "Motion for Sanctions") and the Debtor's Opposition; 3) the Motion to Dismiss Complaint for Lack of Subject Matter Jurisdiction filed by Defendants Lender Processing Services, Inc. and LPS Default Solutions, and the Debtor's Opposition; and 4) the Motion to Dismiss and for Temporary Stay filed by U.S. Bank and the Debtor's Opposition. The Court heard the various matters on September 8, 2011 and took the Motion for Sanctions under advisement. The Court deferred ruling on the Motions to Dismiss and the Lift Stay Motion until such time as the Chapter 7 Trustee filed a statement as to whether he intended to substitute himself as a party plaintiff with respect to some or all of the counts of the Debtor's Complaint, which was filed by the Debtor prior to the conversion of his Chapter 13 case to Chapter 7, or whether he intended to abandon, pursuant to 11 U.S.C. § 554, some or all of the causes of action set forth in the Debtor's Complaint, as well as a statement as to whether he intended to oppose the Lift Stay Motion.

On September 15, 2011, the Chapter 7 Trustee filed a "Statement of Chapter 7 Trustee Regarding Motion for Relief from Stay and Pending Adversary Proceeding in which he indicated that both the Debtor's real property located at 19 Skyline Drive, Medway, Massachusetts (the "Property") and his claims set forth in the adversary proceeding "are burdensome and/or of inconsequential value to the bankruptcy estate." The Trustee further indicated that he intended to abandon both the real property and the

2

claims asserted by the Debtor in his Complaint.

The issues presented include whether U.S. Bank has established a colorable claim to relief from the automatic stay now that the Debtor converted his Chapter 13 case to a case under Chapter 7; whether the Court has jurisdiction to determine, or should abstain from considering, the merits of the Debtor's Complaint; and whether the Court should grant the Motions to Dismiss.  Additionally, the Court must determine whether the Ablitt Law Firm is entitled to an award of sanctions.

## II. BACKGROUND

### A. The Main Case

The Debtor filed a Chapter 13 petition on December 16, 2010  Approximately six weeks later, the Debtor filed his Schedules of Assets and Liabilities, Chapter 13 Plan and other required documents.  On Schedule A-Real Property, the Debtor listed the Property with a value of $330,000, subject to a secured claim of $334,000.  On Schedule B-Personal Property, the Debtor did not disclose any claims against U.S. Bank or the other named defendants.  The Debtor filed a Chapter 13 Plan through which he proposed to pay $300 per month for 36 months. His Plan contained no information about the treatment of secured claims.

The Court dismissed the Debtor's Chapter 13 case on February 25, 2011 for failure to timely file evidence of sufficient and current liability and property insurance.  The Court granted the Debtor's Motion to Reconsider on March 3, 2011 and vacated the order of dismissal after the Debtor filed evidence that he had the requisite insurance.

3

On March 22, 2011, U.S. Bank filed the Lift Stay Motion in which it alleged that on January 26, 2005 the Debtor granted New Century Mortgage Corporation ("New Century") a mortgage on the Property and that it held the mortgage by way of an assignment. In its Lift Stay Motion, it set forth liens and encumbrances on the Property, including four executions totaling approximately $8,848 and a tax taking by the Town of Medway. According to U.S. Bank, the liens and encumbrances, including its mortgage which secured an obligation in the sum of approximately $418,000, exceeded the fair market value of the property which it alleged was $333,400. U.S. Bank also alleged that the Debtor had made no mortgage payment since December of 2008 and that the prepetition arrearage was $92,735.03.

U.S. Bank also disclosed in the Lift Stay Motion that the Debtor had purported to rescind the loan pursuant to the Massachusetts Consumer Credit Cost Disclosure Act (the "MCCCDA"), Mass. Gen. Laws ch. 140D, §§ 1–35. Nevertheless, it sought relief from the automatic stay pursuant to 11 U.S. C. § 362(d)(1) and (d)(2). The Debtor filed an Opposition to the Lift Stay Motion in which he stated the following:

> The movant's motion should be denied because, based on the record before the court, the movant is not a real party in interest in this matter, nor can it claim any colorable right of a standing [sic] as a creditor of the instant bankruptcy estate, and it is therefore not entitled to enforce the subject debt as against the Debtor.

The Debtor moved to amend his Chapter 13 Plan and attached to his Motion an Amended Chapter 13 Plan in which he indicated he had no secured creditors. He also amended his Schedules of Assets and Liabilities. On Amended Schedule A, he reduced the value of his

4

Property to $295,000; on Amended Schedule D, he indicated that the claim of "Select Portfolio Svcin" in the amount of $334,422 was disputed.

The Court heard the Lift Stay Motion on May 19, 2011 and continued the hearing to June 16, 2011. The Court determined that the matter was a contested matter to which the adversary proceeding rules applied. In the meantime, U.S. Bank had filed an Objection to Confirmation of Plan, through which it objected to its treatment under the Debtor's Amended Plan. Because the Debtor failed to respond to the Objection, the Court, on May 26, 2011, sustained the Objection and ordered the Debtor to file a further amended plan within 30 days, failing which it would dismiss the Debtor's Chapter 13 case.

The Debtor moved to reconsider the Court's order, noting the pendency of the Lift Stay Motion and "an impending Adversary Proceeding objecting to the Proof of Claim submitted by Select Portfolio Services on behalf of U.S. Bank. . . ." U.S. Bank filed an Objection to the Motion for Reconsideration. On June 16, 2011, before the Court determined the Motion for Reconsideration, the Debtor commenced the above-captioned adversary proceeding.

On June 16, 2011, the Court conducted a further hearing on the Lift Stay Motion and directed the parties to file, by July 15, 2011, supplemental briefs on the issue of standing, as affected by the order of confirmation entered in the bankruptcy case of New Century. The parties filed those briefs on July 15, 2011. Three days later, the Debtor moved to convert his case to Chapter 7.

On September 15, 2011, the Debtor filed amended Schedules B and C. On Amended

Schedule B, he did not disclose any claims against the Defendants. On Amended Schedule C, he claimed a homestead exemption under Mass. Gen. Laws ch. 235, § 34(14), which references the estate of homestead available under Mass. Gen. Laws ch. 188. The Trustee filed his Statement, disclaiming any interest in the Debtor's claims and indicating his intention not to contest the Lift Stay Motion on the same date. He filed Notices of Intent to Abandon the Property and the causes of action set forth in the Debtor's Complaint on September 27, 2011. Because no objections were filed in response to the Notices of Intent to Abandon, the Property and the claims asserted by the Debtor in the adversary proceeding are no longer property of the estate. *See* 11 U.S.C. § 554(a); Fed. R. Bankr. P. 6007(a).

B. <u>The Adversary Proceeding</u>

The Debtor filed a 45-page Complaint against the Defendants to which he attached 19 exhibits, all of which totaled 673 pages. The Debtor indicated that his Complaint was a formal objection to the proof of claim filed by U.S. Bank based upon its lack of standing as a real party in interest to enforce the note executed by the Debtor. In reality, it is much more than that.

In his Complaint, the Debtor alleged that he refinanced the Property on January 28, 2005; that the mortgage to New Century was recorded on February 2, 2005; and that Select Portfolio Servicing ("SPS") initiated foreclosure proceedings through its attorney, Ablitt & Scofield, P.C. The Debtor further alleged that he "diligently attempted workouts" and entered into numerous loan modifications all of which "'conveniently' for SPS, never

6

worked out." Additionally, he alleged New Century commenced a Chapter 11 bankruptcy

case on April 2, 2007 and that all of the mortgage assets held by New Century as a debtor-

in-possession were divested as of June 29, 2007, making it impossible for U.S. Bank to

obtain a valid mortgage assignment from it on April 9, 2009. He added that in the proof

of claim,

> they [the Defendants] proffer a purported Assignment of the Plaintiff's
> Mortgage, purportedly received directly from New Century Mortgage
> Corporation on April 09, 2009, a point in time some two (2) years after it filed
> for protection for bankruptcy, and also at a point in time almost two (2) years
> after it divested itself of all Mortgage Assets owned as a 'DIP

(emphasis in original). The Debtor also alleged that he sent a rescission letter and, "on

January 14, 2010, New Century responded by correspondence, stating that: "Our records

show that the above-referenced loan was sold and service released to Select Portfolio

Servicing on 7-13-05." (footnote omitted). Additionally, he alleged that the Defendants

have merely produced a copy of the promissory note he executed.

The Debtor formulated nine counts as follows: Count I: "Declaratory Judgment that

Defendant(s) Does Not Have Standing as the Holder of the Plaintiff's Promissory Note as

a Real Party in Interest under G.L. c. 106;" Count II: "Declaratory Judgment that

Defendant(s) Does Not Have Standing to Enforce the Plaintiff's Security Instrument

(Mortgage Contract) as a Real Party in Interest; Count III: "RICO;"[1] Count IV: "Violation

of Chapter 93A and Its Implementing Regulations;" Count V: "Civil Conspiracy;" Count

---

[1] The Debtor cites 18 U.S. C. §§ 1962 and 1964(c) of the Racketeer Influenced and
Corrupt Organizations Act.

VI: "Unjust Enrichment;" Count VII: "Violation of General Laws 140D;" Count VIII:

"Declaratory Judgment That the Plaintiff Is Entitled to Rescind His Mortgage By Way of

Recoupment;" and Count VIII [sic]: "Intentional and Negligent Infliction of Emotional

Distress."

## III. THE MOTION FOR SANCTIONS

### A. The Motion and the Response

The Ablitt Law Firm filed its Motion for Sanctions on July 7, 2011.  In a letter dated

June 15, 2011 it advised Attorney Russell of its intention to seek sanctions, thereby

affording him an opportunity to withdraw or amend the Debtor's Complaint.  *See* Fed. R.

Bankr. P. 9011 (c)(1)(A).  Attorney Russell neither withdrew the Debtor's Complaint nor

filed an Amended Complaint.

The Ablitt Law Firm seeks sanctions against Attorney Russell "for making

statements and allegations unsupported by any reasonable inquiry into the facts and

incorrect recitations of the law contained in the Complaint which initiated this adversary

proceeding." It also asserts that the Debtor's claims are intended to harass the Ablitt Law

Firm, create unnecessary delay and needlessly increase the costs of litigation.  It cites over

50 numbered paragraphs in the Complaint, which it maintains lack foundation and were

intended to harass it, including, *inter alia,* the following:

> Paragraph 11 in which the Debtor, through Attorney Russell, states: "Plaintiff
> additionally seeks redress for Defendant(s) actions with regards to the
> solicitation, sale, and wrongful collection of a legally enforceable debt, as
> well as the accompanying threats to enforce a non-exstent [sic] right to the
> Plaintiff's mortgage by threatening *"pay or else"*.

8

Paragraph 45 in which the Debtor, through Attorney Russell, following a
reference to the Defendants' attempt to "place a fraud on this court," relies
on other cases to impugn the Defendants' veracity by stating:

> In recent months, substantial evidence has come to light that
> Affidavits, as well as other documentary "evidence", such as
> the purported Allonge and purported "Assignment" of the
> Debtor's mortgage here, submitted in Judicial proceedings by
> the Defendant(s) in other matters have revealed the complete
> lack of veracity contained in these proffers, with regards to
> what they were being offered for (such as swearing under oath
> that the Affiant has seen the original note).

Paragraphs 74 through 78 and 83 in which Attorney Russell reproduces the
testimony of an attorney employed by the Ablitt Law Firm in litigation that
culminated in the decision of the Massachusetts Supreme Judicial Court in
U.S. Bank v. Ibanez, 456 Mass. 637 (2010), without any specific context, and
states the following:

> The statements of Attorney Porr in this hearing are quite
> telling, and in fact indicative of Ablitt's business model,
> whereby the Ablitt firm (while being incentivized by LPS)
> takes these foreclosure referrals from LPS and/or SPS, and is
> given direction to blindly follow their lead. In essence, SPS
> and/or LPS is directing Ablitt in the practice of law.

<div align="center">***</div>

> Here the evidence appears to indicate that the "Servicer" (SPS)
> never went back to the "originating lender" to obtain approval
> (how could it?), as it was legally impossible for the
> Defendant(s) here to do so, rather Defendant(s) turned to their
> trusty default servicer, LPS and/or SPS, who directed its
> attorney (Ablitt) to conveniently create the documents needed
> to fill in the missing "intermediary assignments".

Paragraph 106 in which Attorney Russell states that upon information and
belief Defendants, including the Ablitt Law Firm, intentionally undertook
actions with scienter of their wrongfulness "due to the fact that the
securitization process was an ill devised, and thinly disguised, criminal

<div align="center">9</div>

enterprise that requires the production of fraudulent documents. . . ."

Paragraph 117, in which Attorney Russell following references to an Attorney Performance Report, incentives offered by Lender Processing Services to attorneys, and the Ablitt Law Firm in particular, and an exhibit to the Complaint states: "there is a discussion about the "'APF Performance Report', and how Network Attorneys, such as Ablitt are 'incentivized, to maintain the conveyor belt on the 'meat grinder' to keep the process rolling, 'or else'".

Paragraph 121 in which Attorney Russell states that "it turns the stomach to ruminate upon the thought of the Ablitt firm being incentivized (at $20.00 per file) to quickly remove a homeowner from their residence, while reaping a significant 'commission' in addition to the fees it already generates."

Paragraphs 127 through 130 in which Attorney Russell refers to sanctions against Ablitt & Charlton, P.C. in In re Nosek, 406 B.R. 434 (D. Mass. 2009), and concludes: "[e]vidently the $25,000.00 sanction imposed upon the Ablitt law firm, by Judge Young, was not a strong enough message to deter the same future conduct here."

Paragraph 143 in which Attorney Russell refers to his experience "that Defendant's counsel in these matters such as these [sic], quickly seek to point to the fact that the borrower undertook an obligation and is now a 'deadbeat' for not paying that obligation he or she undertook. This has been the successful, 'shift blame as the best defense to create the appearance of an offense' strategy for these type Defendants in order to obfuscate the esoteric malignancy, and fatal defects associated with securitized mortgage lending."

Paragraphs 152 through 154 in which Attorney Russell misrepresents the holding in Wells Fargo Bank, N.A. v. Jaaskelaninen, 407 B.R. 449 (D. Mass. 2009), aff'g in part and rev'g in part, 391 B.R. 626 (Bankr. D. Mass. 2008).

Paragraph 187 in which Attorney Russell challenges the validity of the Debtor's signature on the note, intimating that it was forged when the Debtor admitted signing the note in paragraph 22.

Paragraph 226 in which Attorney Russell alleged that the Ablitt Law Firm was part of "a joint enterprise to willfully induce Plaintiff to enter into a loan transaction that Defendants knew or should have known would result in default," when it was not involved in the loan origination.

10

Paragraphs 256 through 259 in which Attorney Russell alleges that the
Defendants engaged in extortion, threatened the Debtor to pay a legally
unenforceable debt and alludes to threats "akin to Tony Soprano 'making an
offer that you can't refuse'", adding "[o]ne can only imagine an H&B
Louisville Slugger being brandished about by the enterprise, while these
threatening letters and phone calls were being made to the Plaintiff."

Attorney Russell filed an Opposition to the Motion for Sanctions in which he
asserted that the Complaint was not offered for an improper purpose and was filed only
to dispute the validity of the standing of U.S. Bank to enforce the Debtor's mortgage
obligation and to establish that the Defendants have been working in unison to collect an
unenforceable debt. He also asserted that the allegations have evidentiary support. He
maintains that he spent "countless hours examining the evidence" prior to filing the
Complaint, adding that he found "the statements levied at him, by the Gordon Law Firm,
bereft of factual support, or legal authority, and indeed appear to be based predominately
[sic] upon only surmise, and innuendo." Attorney Russell also addressed each and every
paragraph of the Complaint referenced by the Ablitt Law Firm, denying that grounds exist
for sanctions. He conceded, however, that he improperly cited the Iaaskelainen decision.

B. Applicable Law

Federal Rule of Bankruptcy Procedure 9011 provides in relevant part:

(b) Representations to the court. By presenting to the court (whether by
signing, filing, submitting, or later advocating) a petition, pleading, written
motion, or other paper, an attorney or unrepresented party is certifying that
to the best of the person's knowledge, information, and belief, formed after
an inquiry reasonable under the circumstances, —

(1) it is not being presented for any improper purpose, such as to harass or
to cause unnecessary delay or needless increase in the cost of litigation;

11

\*\*\*

> (3) the allegations and other factual contentions have evidentiary support or,
> if specifically so identified, are likely to have evidentiary support after a
> reasonable opportunity for further investigation or discovery . . . .

Fed. R. Bankr.P. 9011(b)(1) and (3). Rule 9011 embodies the policy of promoting "'responsible behavior on the part of [attorneys]' and requires them 'to conduct [themselves] in a manner bespeaking reasonable professionalism and consistent with the orderly functioning of the judicial system.'" Hermosilla v. Hermosilla (In re Hermosilla), 450 B.R. 276, 290 (Bankr. D. Mass. 2011) (citing Featherston v. Goldman (In re D.C. Sullivan Co., Inc.), 843 F.2d 596, 598 (1st Cir. 1988), aff'd in part on rehearing en banc, 878 F.2d 1478 (1989)).[2] See also Aetna Casualty & Surety Co. v. Kellogg, 856 F.Supp. 25, 32 (D. N.H. 2005); In re Krisan, 395 B.R. 500, 509 (B.A.P. 1st Cir. 2008). According to the court in Hermosilla, "[u]nder Fed. R. Bankr. P. 9011, the focus is not whether the claim asserted was frivolous, but whether the attorney conducted an adequate inquiry into the facts and law before filing the claim." 450 B.R. 290-91 (citing Matter of Excello Press, Inc., 967 F.2d 1109, 1111–1112 (7th Cir. 1992); Parker v. Boston Univ. (In re Parker), 334 B.R. 529, 538 (Bankr. D. Mass. 2005)).

Rule 9011(b)(1), which authorizes the imposition of sanctions if a complaint, motion or other paper is interposed for an improper purpose, is directed at abusive litigation practices. In re Kitchin, 327 B.R. 337, 366 (Bankr. N.D. Ill. 2005) (citations omitted).

---

[2] Because Fed. R. Bankr. P. 9011 is derived from Fed. R. Civ. P. 11, the United States Court of Appeals for the First Circuit has stated that "Rule 11 jurisprudence is largely transferable to Rule 9011 cases." 843 F.2d at 598.

According to the court in <u>Kitchin</u>,

> [i]n determining whether a paper has been submitted for an improper purpose, a court must make a subjective inquiry into why the petitioner pursued the litigation. A paper interposed for any improper purpose is sanctionable whether or not it is supported by the facts and the law, and no matter how careful the pre-filing investigation."

<u>Id.</u> (citations omitted).  According to the court in <u>In re Collins</u>, 250 B.R. 645, 661 (Bankr.

N.D. Ill. 2000),

> Rule 11 has both a subjective and an objective component. <u>Harlyn Sales Corp. Profit Sharing Plan v. Kemper Financial Services, Inc.</u>, 9 F.3d 1263, 1269 (7th Cir.1993); Mars Steel, 880 F.2d at 931, <u>Slaughter v. Waubonsee Community College</u>, No. 94 C 2525, 1995 WL 106420 at *3 (N.D.Ill. March 9, 1995). So does Rule 9011. <u>In re Val W. Poterek & Sons, Inc.</u>, 169 B.R. 896, 908 (Bankr. N.D. Ill. 1994); <u>Park Place</u>, 118 B.R. at 617. The objective inquiry asks whether the suit was filed after reasonable investigation into the law and the facts. <u>Szabo Food Service, Inc. v. Canteen Corp.</u>, 823 F.2d 1073, 1083 (7th Cir. 1987). The subjective inquiry is into why the petitioner pursued the litigation. <u>Id.</u> The objective component is equivalent to the tort of abuse of process (filing an objectively frivolous suit). <u>Id.</u> The subjective component is akin to the tort of malicious prosecution (filing a colorable suit to harass, delay, or cause expense to the opponent). <u>Kapco Mfg. Co., Inc. v. C & O Enter., Inc.</u>, 886 F.2d 1485, 1491 (7th Cir.1989); <u>Szabo</u>, 823 F.2d at 1083; <u>In re TCI Ltd.</u>, 769 F.2d 441, 445 (7th Cir.1985). The objective inquiry asks whether the requirement of Rule 11(b)(2), that the legal contentions are supported by law, has been satisfied. The subjective inquiry asks whether the requirement of Rule 11(b)(1), that the paper has not been presented for an improper purpose, has been met. Failure to satisfy the requirements of either test may result in sanctions. <u>Szabo</u>, 823 F.2d at 1083; *see also* <u>Beeman v. Fiester</u>, 852 F.2d 206, 209 (7th Cir.1988) (explaining that if any one of Rule 11(b)'s subsections has been violated, Rule 11 sanctions may be imposed).

<p align="center">***</p>

> [W]hether the test bears the "subjective" label affixed in <u>Mars Steel</u> or the "objective" label of <u>Pacific Dunlop</u>, [<u>Pacific Dunlop Holdings, Inc. v. Barosh</u>, 22 F.3d 113, 118 (7th Cir. 1994)] the inquiry is into the motivations behind the filing. <u>Pacific Dunlop</u> briefly states that "[w]e determine whether a party's

conduct was imposed for an improper purpose by an objective standard," 22 F.3d at 118, and cites to Deere, 855 F.2d at 393. In Deere, the court said that it must "focus on objectively ascertainable circumstances that support an inference that a filing harassed the defendant or caused unnecessary delay." Deere, 855 F.2d at 393 quoting National Ass'n of Gov't Employees, Inc. v. National Fed'n of Federal Employees, 844 F.2d 216, 224 (5th Cir.1988). The Deere court relied on Beeman v. Fiester, 852 F.2d 206, 209–10 (7th Cir.1988), *abrogated by* Mars Steel, 880 F.2d at 928. In Beeman, the court wrote that an objective test for improper purpose "necessarily requires an inquiry into the party's reasons for filing the paper" and places an emphasis on "the party's motives for filing the paper." 852 F.2d at 209. The Beeman court further explained that the subjective test becomes particularly important when the suit is objectively colorable. Id. at 209 n. 1. Thus, no matter which label attaches to the test, "subjective" or "objective," the test of whether a paper was interposed for an improper purpose focuses on the reasons or motives for the filing.

In re Collins, 250 B.R. at 661-62. "Imposition of Rule 11 sanctions does not require a finding of bad faith. Subjective good faith is also not enough to protect an attorney from sanctions under Rule 11." Obert v. Republic Western Ins. Co., 264 F.Supp.2d 106, 119 (D.R.I. 2003) (citation omitted).

With respect to Fed. R. Bankr. P. 9011(b)(3), an attorney has an "'affirmative duty to conduct a reasonable inquiry into the facts and the law'" before signing a pleading. Hermosilla, 450 B.R. at 291 (quoting Business Guides, Inc. v. Chromatic Commc'ns Enters., Inc., 498 U.S. 533, 551 (1991)). A court determines whether this duty has been breached based upon an objective reasonableness standard in light of litigant's conduct under the totality of the circumstances. Hermosilla, 450 B.R. at 291 (citing Business Guides, Inc., 498 U.S. at 551 and Lancellotti v. Fay, 909 F.2d 15, 18–19 (1st Cir.1990)).

To determine whether a litigant made a reasonable inquiry into the facts, the district court should examine all the circumstances, including the complexity

14

of the subject matter, the party's familiarity with it, the time available for inquiry, and the ease (or difficulty) of access to the requisite information. Litigants, like counsel, are to be held "to standards of due diligence and objective reasonableness-not perfect research or utter prescience."Furthermore, for Rule 11 purposes, a party's pleading must be judged on the basis of what was reasonable when the pleading was filed rather than in hindsight.

Navarro–Ayala v. Nunez, 968 F.2d 1421, 1425 (1st Cir.1992).  As noted by the court in

Hermosilla, "it is clear that '[a] violation of Rule 11 . . . might be caused by inexperience,

incompetence, willfulness, or deliberate choice.'" 450 B.R. at 291 (citing Sylver v. Sec. Pac.

Servs. Inc. (In re Sylver), 214 B.R. 422, 428 (B.A.P. 1st Cir. 1997) ( quoting Cruz v. Savage,

896 F.2d at 631)).

Under Rule 9011, the imposition of sanctions is discretionary, not mandatory.  In re

Dental Profile, Inc., 446 B.R. 885, 903 (Bankr. N.D. Ill. 2011) (citing In re Generes, 69 F.3d

821, 827 (7th Cir. 1995)).  The court may impose various types of sanctions, including "fines

payable to the court clerk, an award of attorneys' fees and costs to the sanctioned party's

opponent, the disgorgement of fees paid to the sanctioned attorney, an injunction

prohibiting specific types of future filings, mandatory legal education, stricken pleadings,

referrals to disciplinary bodies, and reprimands either on or off the record." In re Dental

Profile, Inc., 446 B.R. at 903 (citation omitted).  "In determining the appropriate sanction,

courts may consider Rule 9011's multiple purposes of punishment, deterrence, and

compensation; the severity of the violation; any resultant delay; and a sanctioned party's

ability to pay the sanctions." Id. (citation omitted).  The United States Court of Appeals for

the First Circuit has emphasized deterrence. See Lamboy-Ortiz v. Ortiz-Velez, 630 F.3d 228,

247 (1st Cir. 2010); <u>Ameriquest Mortg. Corp. v. Nosek (In re Nosek)</u>, 609 F.3d 6, 9 (1st Cir.

2010).

    C. <u>Analysis</u>

    This Court has reviewed both the Motions for Sanctions and Attorney Russell's

response to the paragraphs of the Complaint identified by the Ablitt Law Firm as

interposed for an improper purpose or lacking evidentiary support. It is not this Court's

intention to conduct an evidentiary hearing as to Attorney Russell's subjective intent with

respect to each and every allegation he formulated on the Debtor's behalf to which the

Ablitt Firm objects. The Court's review of the Complaint compels the conclusion that under

an objective standard the improvident tone of the Complaint, as much as specific

allegations and the inclusion of irrelevant and prejudicial information, such as the

testimony of an employee of the Ablitt law firm in the <u>Ibanez</u> case, which attorney may or

may not be associated with the Ablitt Firm now, warrant the imposition of sanctions under

Fed. R. Bankr. 9011(b)(1).

    A complaint should contain a short, plain statement of the relief requested. *See* Fed.

R. Bankr. P. 7008. The Debtor's Complaint is anything but "a short and plain statement of

claim showing that the pleader is entitled to relief." *See* Fed. R Civ. P. 8(a), made

applicable to this proceeding by Fed. R. Bankr. P. 7008(a). The Complaint filed by Attorney

Russell on the Debtor's behalf contains innuendo, invective, hearsay in the form of

testimony in a case unrelated to this bankruptcy case, argument more appropriately set

forth in a memorandum in support of summary judgment or submitted after a trial on the

16

merits, and rhetorical questions, such as "Plaintiff respectfully queries this court as to exactly where his payments have been credited, were they sent to the New Century Bankruptcy Estate? Or to the Trust prior to it ever having the purported right to do so?" Moreover, the nine counts of the Complaint are directed at all the Defendants, without specificity. While the Debtor and his counsel may be legitimately outraged by the well-publicized abuses in the mortgage industry, the full scale, hyperbolic attack on that industry in a Complaint in which the Debtor is primarily seeking a determination as to U.S. Bank's standing to foreclose the mortgage he executed does not advance the Debtor's cause. More significantly, it has caused delay and driven up the cost of litigation. The Complaint drafted by Attorney Russell contains a long, convoluted statement of the facts which incorporates a diatribe about the lending abuses associated with the securitization of mortgages. Rather that clearly setting forth a chronology that would explicate the reasons why the assignment of the Debtor's mortgage is invalid, Attorney Russell blurred legitimate claims for relief with references to television characters (Tony Soprano), and other cases and conduct of unrelated parties which may or may not have a bearing on the outcome of this case and would be pertinent only at the summary judgment or trial stage. A complaint under the Federal Rules of Bankruptcy Procedure does not contemplate melodrama, but that is what Attorney Russell produced. His "David versus Goliath" plea that he is representing the little guy against a mighty corrupt industry does not compel a different result. The Court finds that sanctions are warranted under the circumstances.

In view of primary objective of deterrence emphasized by the United States Court

17

of Appeals for the First Circuit in In re Nosek, 609 F.3d at 9, the Court shall enter an order imposing sanctions on Attorney Russell in the sum of $1,000, which sum shall be payable to a non-profit legal organization that benefits indigent consumers, such as the Volunteer Lawyers Project of the Boston Bar Association.

In view of the Court's decision to impose sanctions under Fed. R. Bankr. P. 9011(b)(1), the Court shall not consider sanctions under Rule 9011(b)(3). By attaching 19 exhibits to his Complaint, Attorney Russell endeavored to substantiate the allegations he made against the Defendants. The sanctionable conduct is his inability to appropriately filter the information available to him to exclude ad hominem attacks and irrelevant and prejudicial materials in his Complaint.

## IV. THE MOTIONS TO DISMISS

A. <u>Position of the Movants</u>

Lender Processing Services, Inc. and LPS Default Solutions, Inc. move to dismiss the Debtor's Complaint because the relief he seeks will have no conceivable effect on the bankruptcy estate. They maintain that neither the United States District Court, nor its unit, the Bankruptcy Court, have subject matter jurisdiction to hear, let alone determine, the Debtor's lawsuit. In the alternative, they ask the Court to dismiss the case because the Debtor lack of standing, which itself impacts subject matter jurisdiction. They add that they have no, or insufficient, contacts with the Commonwealth of Massachusetts that would enable the Court to exercise in personam jurisdiction over them, and for that independent reason, the adversary proceeding.

B. Applicable Law

The Supreme Court in <u>Stern v. Marshall</u>, __ U.S.__, 131 S.Ct. 2594 (2011), succinctly

set forth the basis of bankruptcy court jurisdiction. It stated:

> [T]he district courts of the United States have "original and exclusive
> jurisdiction of all cases under title 11." 28 U.S.C. § 1334(a). Congress has
> divided bankruptcy proceedings into three categories: those that "aris[e]
> under title 11"; those that "aris[e] in" a Title 11 case; and those that are
> "related to a case under title 11." § 157(a). District courts may refer any or all
> such proceedings to the bankruptcy judges of their district, <u>ibid.</u>, which is
> how the Bankruptcy Court in this case came to preside over Vickie's
> bankruptcy proceedings. *District courts also may withdraw a case or proceeding*
> *referred to the bankruptcy court "for cause shown." § 157(d).* Since Congress
> enacted the Bankruptcy Amendments and Federal Judgeship Act of 1984 (the
> 1984 Act), bankruptcy judges for each district have been appointed to
> 14-year terms by the courts of appeals for the circuits in which their district
> is located. § 152(a)(1).
>
> The manner in which a bankruptcy judge may act on a referred matter
> depends on the type of proceeding involved. Bankruptcy judges may hear
> and enter final judgments in "all core proceedings arising under title 11, or
> arising in a case under title 11." § 157(b)(1). "Core proceedings include, but
> are not limited to" 16 different types of matters, including "counterclaims by
> [a debtor's] estate against persons filing claims against the estate." §
> 157(b)(2)(C).

<u>Stern v. Marshall</u>, 131 S.Ct. at 2603 (emphasis added). The Court finds that the Debtor's

claims neither arise under title 11 nor arise in the Debtor's bankruptcy case for purposes

of 28 U.S.C. §§ 157(a) and (b), and 1334(b). They do not implicate any of the core

proceedings referenced in 28 U.S.C. § 157(b)(2),[3] which the bankruptcy court may hear and

---

[3] Section 157(b)(2) provides:

> (2) Core proceedings include, but are not limited to–
>
> > (A) matters concerning the administration of the estate;

19

(B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;

(C) counterclaims by the estate against persons filing claims against the estate;

(D) orders in respect to obtaining credit;

(E) orders to turn over property of the estate;

(F) proceedings to determine, avoid, or recover preferences;

(G) motions to terminate, annul, or modify the automatic stay;

(H) proceedings to determine, avoid, or recover fraudulent conveyances;

(I) determinations as to the dischargeability of particular debts;

(J) objections to discharges;

(K) determinations of the validity, extent, or priority of liens;

(L) confirmations of plans;

(M) orders approving the use or lease of property, including the use of cash collateral;

(N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate;

(O) other proceedings affecting the liquidation of the assets

20

determine pursuant to 28 U.S.C. § 157(b)(1). Moreover, the Debtor's claims are not related

to his Chapter 7 case for reasons explained below.

In <u>Boston Regional Med. Center, Inc. v. Reynolds (In re Boston Regional Med.</u>

<u>Center, Inc.)</u>, 410 F.3d 100 (1st Cir.2005), the United States Court of Appeals for the First

Circuit discussed the "related-to" jurisdiction of the bankruptcy court under 28 U.S.C. 1334

(b). It stated:

> The statutory grant of "related to" jurisdiction is quite broad. Congress
> deliberately allowed the cession of wide-ranging jurisdiction to the
> bankruptcy courts to enable them to deal efficiently and effectively with the
> entire universe of matters connected with bankruptcy estates. *See* <u>Pacor, Inc.</u>
> <u>v. Higgins</u>, 743 F.2d 984, 994 (3d Cir.1984). Thus, bankruptcy courts
> ordinarily may exercise related to jurisdiction as long as the outcome of the
> litigation "potentially [could] have some effect on the bankruptcy estate, such
> as altering debtor's rights, liabilities, options, or freedom of action, or
> otherwise have an impact upon the handling and administration of the
> bankrupt estate." <u>In re G.S.F. Corp.</u>, 938 F.2d 1467, 1475 (1st Cir.1991)
> (quoting <u>In re Smith</u>, 866 F.2d 576, 580 (3d Cir.1989)).

<u>In re Boston Regional Med. Center, Inc.</u>, 410 F.3d at 105. In <u>In re Harris</u>, 450 B.R. 324

(Bankr. D. Mass. 2011), the bankruptcy court set forth circumstances where the outcome

of litigation, such as that brought by the Debtor in the adversary proceeding, might impact

the bankruptcy estate. It stated:

---

> of the estate or the adjustment of the debtor-creditor or the
> equity security holder relationship, except personal injury
> tort or wrongful death claims; and
>
> (P) recognition of foreign proceedings and other matters
> under chapter 15 of title 11.

28 U.S.C. § 157(b)(2).

In cases filed under Chapter 7, the validity of an asserted mortgage may also impact the administration of the bankruptcy estate. For instance, if voiding or reducing the asserted security interest leaves nonexempt equity available for distribution to unsecured creditors the bankruptcy estate is clearly impacted. Similarly, if the debtor has affirmative prepetition claims against the mortgagee, those claims vest in the Chapter 7 trustee, who may pursue recovery on the claims for the benefit of unsecured creditors. The bankruptcy court's jurisdiction may also be invoked by a purported mortgagee filing a proof of claim which would entitle that creditor, in the event that the claim is undersecured, to an aliquot share of the dividend payable to unsecured creditors. And if the bankruptcy court is asked by the purported mortgagee for relief from the automatic stay under § 362(a) for leave to initiate or continue a state court proceeding incident to foreclosure, the court has jurisdiction to address the questions arising from that request (but only to determine whether the movant has a colorable claim, *see* Grella v. Salem Five Cent Sav. Bank, 42 F.3d 26, 33–34 (1st Cir.1994)).

None of those circumstances exist here. The Debtor has brought this case under Chapter 7. He has exempted the Property. The Trustee has chosen not to pursue the claims asserted by the Debtor. The purported mortgagee has not filed a proof of claim (and the deadline for filing one has passed). . . .

Harris, 450 B.R. at 334–35.

C. Analys

The Court finds that lacks subject matter jurisdiction to consider the merits of the

Debtor's Complaint. The Debtor claimed a homestead exemption in the Property to which

no timely objections were filed, *see* Fed. R. Bankr. P. 4003(b), and the Chapter 7 Trustee has

filed Notices of Intent to Abandon both the Property and the causes of action set forth in

the Debtor's Complaint.  In his Notice of Abandonment of Causes of Action, the Trustee

states:

As grounds for the abandonment, the Trustee states that he has reviewed the Causes of Action, including the likelihood of success and costs of litigation. The Trustee has further reviewed the Debtor's amended exemptions and

concluded that, even if the Causes of Action contained a valid defense to the mortgage encumbering the real property located at 19 Skyline Drive, Medway, Massachusetts;    [sic] because the Debtor has asserted a Massachusetts homestead exemption, no value would be realized for the benefit of the Estate.    Based upon the foregoing review, the Trustee has determined that abandonment is appropriate pursuant to section 554(a) of the Bankruptcy Code as the Causes of Action are burdensome and of inconsequential value to the estate.

Although the Debtor has yet to receive a discharge and the Trustee has yet to file a Report of No Distribution, the outcome of the Debtor's Complaint will have no impact on his bankruptcy estate.    Additionally, it will not  alter the Debtor's "rights, liabilities, options, or freedom of action" as the relief he seeks in his Complaint can be asserted in another forum.    The allowance of the Motion to Dismiss filed by Lender Processing Services, Inc. and LPS Default Solutions is without prejudice to the Debtor's assertion of any and all claims against them and the other Defendants in the appropriate forum.

Because the Court shall enter an order granting the Motion to Dismiss filed by Lender Processing Services, Inc. and LPS Default Solutions, the Motion to Dismiss and for Temporary Stay filed by U.S. Bank pursuant to Fed. R. Bankr. P. 7012(b)(6) and Fed. R. Bankr. 7009 is moot.

## V. THE MOTION FOR RELIEF FROM THE AUTOMATIC STAY

The Court shall enter an order granting U.S. Bank relief from the automatic stay as U.S. Bank has established a colorable claim to relief.  *See* Grella v. Salem Five Cent Sav. Bank, 42 F.3d 26, 33–34 (1st Cir.1994)).  In view of the decision of the Chapter 7 Trustee to abandon the estate's interest in the Property, as well as his Statement Regarding Motion

23

for Relief from Stay and Pending Adversary Proceeding and lack of opposition to the

Motion for Relief from Stay, the Court shall enter a order granting the Motion for Relief

from the Automatic Stay.  The Court, however, shall stay the order for a period of 28 days

to afford the Debtor an opportunity to protect his rights and asserts his claims in an

appropriate forum.

## VI. CONCLUSION

In view of the foregoing, the Court shall enter orders sanctioning Attorney Russell,

dismissing the adversary proceeding, and granting relief from the automatic stay.

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated: October 21, 2011